USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-6-2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA          :
                                  :      **ORDER**
v.                                :
                                  :      24 CR 278 (VB)
VINCENT CANNADY,                  :
                        Defendant. :
-------------------------------------------------------x

On December 26, 2024, defendant Vincent Cannady, who is proceeding pro se, filed a

motion requesting that the Court recuse itself in this case, claiming that the Court has subjected

him to "harassing treatment, biased based rulings, and discriminatory behavior." (Doc. #128 at

ECF 1).[1]  Specifically, Cannady maintains the Court (i) wrongly required Cannady's bond

package be secured, in part, by his home; (ii) made "race based discriminatory comments" about

Cannady and has issued decisions rooted in racial animus; (iii) has a financial interest in this

case; and (iv) has "harassed and repeatedly threatened" Cannady "with revoking his Pro Se

status." (Id. at ECF 2–4).[2]

Each of these assertions is entirely without merit.  For the reasons set forth below, the

motion is DENIED.

I.      Bond Application

Cannady alleges the Court made discriminatory statements and discriminated against him

by requiring his family home be used as collateral for his bond.

---

[1]      "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case
Filing system.

[2]      To the extent defendant claims the Court violated 28 U.S.C. § 351 through this conduct,
that statute simply sets forth the process for filing a judicial complaint.  It does not create any
independent obligations for this Court, and Cannady does not claim the Court has interfered with
that process.

As an initial matter, the Bail Reform Act expressly allows the Court to condition Cannady's pretrial release on "an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value . . . as is reasonably necessary to assure [his] appearance," or on "any other condition that is reasonably necessary to . . . assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xi), (xiv).  Thus, requiring Cannady's home to be used as security for his bond is not improper.

Moreover, it was Cannady who initially suggested this condition.  On May 31, 2024, then-counsel for Cannady first raised this condition at the arraignment before Magistrate Judge McCarthy.  (Doc. #10, Tr. 34, 36).  Judge McCarthy issued, and Cannady signed, a secured bond of $100,000, with "$50,000 secured by the defendant's home."  (Doc. #7 at ECF 1).  In modifying the conditions of release at a hearing held on November 21, 2024, the Court continued that condition while otherwise removing other conditions to which Cannady objected, including the requirements that a financially responsible person co-sign Cannady's bond, that the co-signer be interviewed by the government before Cannady's release, and that two additional persons co-sign the bond for moral suasion purposes.  (Minute Entry, Nov. 21, 2024).  The Court determined that putting Cannady's home at risk of forfeiture was "the least restrictive further condition" necessary to reasonably assure Cannady's continued appearance in court and the safety of the community.  18 U.S.C. § 3142(c)(1)(B).  Specifically, the Court found that requiring the bond to be secured by Cannady's home was necessary to reasonably assure that Cannady would comply with the condition that, within seven days of his release, he surrender all physical and electronic copies of any information or materials downloaded from Kyndryl or pertaining to Kyndryl's information systems or potential infrastructure vulnerabilities.

Cannady takes out of context a comment the Court made during the December 12, 2024, conference regarding the consequences that Cannady would "suffer" should he violate the conditions of his release. (Doc. #128 at ECF 2). Contrary to Cannady's assertions, the Court's remark reveals no personal animus. Rather, the Court simply observed that Cannady could potentially forfeit his home if he violated the conditions of his release—a routine condition of pretrial release and one that the Court found is particularly appropriate in this case.

II.    <u>Accusations of Racial Animus</u>

Cannady alleges the Court's rulings in this case have been motivated by racial bias.

This allegation is demonstrably false. The Court has never made a ruling motivated by racial prejudice, nor has it expressed any discriminatory comments to or about Cannady or about anyone else involved in this case. Cannady does not identify a single instance in which the Court referenced Cannady's race, either expressly or implicitly, when announcing a decision—nor can he, because the Court has never done so.

Cannady's accusations of racial bias are not only unfounded, but the purported examples he provides are completely detached from the voluminous record in this case. For instance, the Court observed that Cannady was extremely intelligent and therefore capable of understanding the risks associated with proceeding <u>pro se</u>, although that did not mean he fully understood the nuances of federal criminal law. The Court also referenced Cannady's intelligence while observing that Cannady's health challenges did not render him incapable of interacting with the Court and articulating his concerns. Those comments had nothing to do with Cannady's race. Relatedly, Cannady makes the absurd claim that the Court has a disability because it does not "understand technology," and that this "lack of understanding of technology . . . creates a disability of rendering a decision that is not race based." (Doc. #128 at ECF 3). But nothing

about the Court's supposed lack of understanding of technology, even if true, which it is not,

suggests a discriminatory bias. Likewise, the Court's statement that Cannady's wife should be

"on the hook," was not the least bit discriminatory; it meant only that having Cannady's wife as a

co-signer of any bond would provide additional incentive for Cannady to comply with the

conditions of release.

Cannady's race has had no bearing on the Court's rulings, and will not have any bearing

on the Court's rulings going forward. Accordingly, the Court will not recuse itself because of

Cannady's claims of discrimination.

III.    The Court's Financial Interests

Cannady claims the Court has a financial interest in this case. Specifically, he asserts the

Court owns "Stocks and or Options" in Vanguard, and that "Vanguard owns IBM which owns

forty percent of the stock in Kyndryl." (Doc. #128 at ECF 3). None of this is true.

First, the Court does not own stocks and/or options in Vanguard. Rather, the Court has

investments in mutual funds managed by Vanguard[3] and does not participate in any way in the

management of these funds. Canon 3(C)(1)(c) of the Code of Conduct for United States Judges

requires a judge to disqualify himself when the judge knows he "has a financial interest in the

subject matter in controversy or in a party to the proceeding." But "ownership in a mutual or

common investment fund that holds securities is not a 'financial interest' in such securities

unless the judge participates in the management of the fund." Canon 3(C)(3)(c)(i). Thus,

"investment in a mutual fund does not convey an ownership interest in the companies whose

stock the fund holds." U.S. Courts, Guide to Judiciary Policy, Vol. 2B, Ch. 2, Committee on

---

[3]    This fact is reflected in the Court's publicly available annual financial disclosure reports, to which Cannady presumably has access.

Codes of Conduct Advisory Opinion No. 106 (March 2011). In short, even assuming the truth of Cannady's assertion that "Vanguard owns IBM which owns forty percent of the stock in Kyndryl" (Doc. #128 at ECF 3), the Court has no financial interest in the subject matter in controversy or in a party to this case.

Second, even if the Court had a financial interest in Vanguard, which it does not, there is no basis for Cannady's claim that Vanguard "owns" IBM. (Doc. #128 at ECF 3). IBM is a publicly-traded company. Vanguard might own shares in IBM, and IBM might own shares in Kyndryl. However, that does not mean Vanguard owns or controls either company.

Accordingly, the Court has no financial interest in this case or in its parties or victims that would warrant recusal.

IV.    Pro Se Status

Finally, Cannady claims the Court has "threatened" to revoke his pro se status "for simply defending himself." (Doc. #128 at ECF 3). Again, Cannady is incorrect. Because the right to self-representation is not without limits, and the Court may revoke a defendant's pro se status if, among other things, the defendant "deliberately engages in serious and obstructionist misconduct, or is not able and willing to abide by rules of procedure and courtroom protocol," Clark v. Perez, 510 F.3d 382, 395 (2d Cir. 2008), the Court has simply, and correctly, noted that it may, at some point in the future, consider whether Cannady has transgressed those limits. Reminding Cannady that his right to proceed pro se is constrained is a far cry from "harass[ing] and repeatedly threaten[ing]" him with the revocation of his pro se status. (Doc. #128 at ECF 3). The Court's comments do not present any grounds for recusal.[4]

---

[4]    To the extent Cannady makes any other arguments in support of recusal, those arguments likewise are without merit.

**CONCLUSION**

The motion to recuse is DENIED.

The Clerk is instructed to terminate the motion.  (Doc. #128).

Standby counsel is directed to provide a copy of this Order to defendant by email.

Dated: January 6, 2025
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge