UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA                     :

v.                                                             :      <u>ORDER</u>

                                                               :      24 CR 278 (VB)
VINCENT CANNADY,
                                    Defendant.     :
------------------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: _1 - 8 · 26_

By letter dated December 10, 2025, defendant Cannady made a number of requests to the

Court related to his vision impairment. (Doc. #485). To ensure Cannady's pro se status and vision

impairment were reasonably accommodated, the Court contacted staff at MDC-Brooklyn ("MDC")

to inquire about Cannady's complaints and related requests. As a result, with the cooperation of

MDC staff and the U.S. Attorneys' Office, the Court arranged further accommodations for Cannady,

including delivery of a laptop specially configured to address his vision impairment. These

arrangements are detailed in the Court's December 22, 2025, orders regarding accommodations (the

"Accommodations Order") (Doc. #486) and issuing Cannady a laptop (the "Laptop Order") (Doc.

#489). On January 5, 2026, the government FedExed the specialized laptop to MDC for next day

delivery. (Doc. #492).

Notwithstanding the foregoing, the Court received "Defendant's Formal Objections to the

Court's December 22, 2025, Order," dated January 4, 2026, (the " Jan. 4 Objections"). (Doc. #493).[1]

The Jan. 4 Objections advance six numbered objections, all of which, at bottom, contend Cannady

lacks meaningful access to the Court while incarcerated at MDC.

Therefore, Cannady asks the Court to: (1) "vacate or modify its December 22, 2025 Order to

correct factual inaccuracies"; (2) "permit printing of public-docket materials"; (3) order a hearing

---

[1]     Although the Jan. 4 Objections appears to refer primarily to the Laptop Order (Doc.
#489), in light of Cannady's pro se status, the Court has also considered the Accommodations
Order in ruling on the Jan. 4 Objections.

1

pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979); (4) "require accurate representations from MDC Brooklyn"; (5) order MDC Brooklyn to provide Cannady with "meaningful ADA and Rehabilitation Act accommodations"; and (6) "grant such other relief as justice requires." (Doc. #493 at 7).

Despite the Jan. 4 Objections, it is evident that Cannady has had, and continues to have, meaningful access to the Court since his transfer to MDC. Cannady was transferred to MDC on or about September 24, 2025. Since then, he has filed twenty-six motions, letters, and objections on the docket. (Docs. ##431–34, 436–40, 445, 448–49, 454, 456–57, 459, 460–62, 465, 467, 485, 487, 490–91, 493). Moreover, as evidenced by both the Accommodations Order and the Laptop Order, Cannady has received reasonable accommodations, both respect to his pro se status and his vision impairment.

Accordingly, for the following reasons, the Jan. 4 Objections are overruled, and Cannady's requests are DENIED.

1.      Cannady objects to the Laptop Order because it prohibits him from printing discovery and trial materials from his specially-issued laptop even though the laptop does not contain any attorney's eyes only or attorney's possession only material. (Doc. #493 at 2). Although the Laptop Order does prohibit Cannady from printing materials from the laptop (Doc. #489 at ¶¶ 7–8), Cannady's objection misses the point of the prohibition.

The Laptop Order provides Cannady be afforded the ability to access the laptop to review materials "in a manner consistent with the rules and operations of" MDC. (Doc. #489 at ¶ 6). As Cannady himself acknowledges, MDC does not permit printing by inmates. (Doc. #493 at 5). Therefore, whether the materials on the laptop carry a confidentiality designation or not is irrelevant. MDC does not permit inmate printing and the Laptop Order requires Cannady to comply with MDC policies. Moreover, if Cannady requires printed copies of any of the discovery or trial materials on

2

the laptop, he may make use of stand-by counsel by requesting that stand-by counsel (or other members of Cannady's legal defense team) print and mail necessary documents to him.

Similarly, Cannady objects to the Laptop Order on the grounds that it prohibits him from printing publicly-filed documents already in his possession. (Doc. #493 at 2–3). Again, consistent with MDC policies, the Laptop Order prohibits Cannady from printing materials from the laptop. It does not, however, make specific reference to Cannady's ability to print or otherwise access publicly-filed documents. (Doc. #489).

The purpose of the Laptop Order is to ensure Cannady has meaningful access to materials in preparation for his sentencing, by virtue of having access to discovery materials (not including attorney's possession only materials), trial transcripts, trial exhibits, and the final presentence investigation report, in a format he can read, prior to his sentencing. It is not to permit Cannady special dispensation to print at MDC. Contrary to Cannady's objection, requiring him to comply with MDC's prohibition on printing as a condition of using the laptop does not impair his right of access to the Court. The cases Cannady sites in support of his objection are inapt. Both cases concern inmate access to "adequate law libraries or adequate assistance from persons trained in the law" as a means of ensuring their constitutional right of access to the courts in civil cases. Bounds v. Smith, 430 U.S. 817, 828 (1977). Neither of these cases refer to printing, and the more recent case, Lewis v. Casey, makes clear that "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring" adequate access to the courts. 518 U.S. 343, 351 (1996).

Cannady has had, and continues to have, more than adequate access to the Court. He has managed to prepare and file twenty-six items since his transfer to MDC and the government has now sent him a specially configured laptop. And, crucially, Cannady has access to his stand-by counsel, who can print and mail Cannady any filing on the docket he wants.

2.    Cannady objects because the Court has not held a hearing to address his accommodations at MDC. Cannady incorrectly refers to the desired hearing as a "Fatico hearing." (Doc. #493 at 3).

A so-called "Fatico hearing" refers to an evidentiary hearing held "where there is reason to question the reliability of material facts having in the judge's view direct bearing on the sentence to be imposed." United States v. Fatico, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979). To be clear, in this case, there is no reason to question the reliability of any material fact relevant to sentencing. Therefore, there is no reason for a Fatico hearing, and the Court will not conduct a Fatico hearing.

In any event, Cannady appears to want a hearing to address the "disputed facts" regarding his accommodations at MDC, the impact of those accommodations on his ability to litigate this case and prepare for sentencing, and the "credibility of MDC Brooklyn's representations" regarding these matters. (Doc. #493 at 3).[2] Cannady is not entitled to such a hearing and his request is denied. The Court is concerned with ensuring Cannady has adequate accommodations for his vision impairment and meaningful access to the Court prior to sentencing. For reasons already discussed, the Court is satisfied on both fronts. Moreover, the Court is persuaded that representations made to the Court by MDC staff regarding Cannady's accommodations are credible and reliable.

3.    Cannady next objects to "the Court's finding that MDC Brooklyn Computers are ADA Compliant." (Doc. #493 at 4). As an initial matter, although the Laptop Order provides

---

[2]    Although Cannady may have complaints about his accommodations at MDC, his contention that his "ability to litigate and prepare submissions" has been negatively impacted is, to say the least, not credible. As recently as December 26, 2025, Cannady prepared and filed a 36-page document objecting to the Presentence Investigation Report. (Doc. #490).

Cannady can "enable accessibility features [on MDC computers] with the assistance of MDC staff," the Court made no finding regarding whether MDC computers were ADA compliant. (Doc. #486 at 2). The Court is not concerned with whether MDC computers are ADA compliant. Rather, as discussed above, the Court is concerned with ensuring Cannady has adequate and meaningful access to the Court and accommodations for his pro se status and vision impairment. He does.

Cannady likewise objects to a lack of access to a computer with color inversion, screen magnification, and accessible font scaling. (Doc. #493 at 4). However, Cannady prepared this objection on January 4, 2026, prior to receiving the specially configured laptop. The government subsequently FedExed the laptop to MDC for delivery by January 6, 2026. (Doc. #492). Because the laptop contains all of Cannady's requested accessibility features, this objection is moot.

4.  As discussed above, Cannady objects to the lack of inmate printing at MDC. (Doc. #493 at 5). It is the Court's understanding that the prohibition on inmate printing is MDC policy. Contrary to Cannady's contention, an inability to print does not amount to lack of access to the Court under Lewis v. Casey, 518 U.S. 343, 351 (1996). Cannady is encouraged to utilize stand-by counsel for his printing needs.

5.  Cannady contends the materials provided by MDC pursuant to the Accommodations Order—namely, a writing pad, five magic markers, and magnifying paper—are "insufficient and ineffective" under the ADA. (Doc. #493 at 6). In support, Cannady sites Henrietta D. v. Bloomberg, a case concerning the provision of public assistance benefits by New York City to indigent New Yorkers suffering from AIDS or HIV. 331 F.3d 261 (2d Cir. 2003). Henrietta D., has no relevance to Cannady's accommodations in this criminal case. Moreover, as Cannady's twenty-six recent filings from MDC make plain, he does not require these accommodations to access the Court, litigate

this case, or prepare for sentencing. And, as the Court noted in the Accommodations Order, Cannady may purchase further writing pads from the commissary. (Doc. #486 at 2).

6.    Cannady's final objection pertains to the Court's description of the arrangements provided for Cannady to receive cataract surgery while in custody. (Doc. #493 at 6). Cannady's medical issues and aborted cataract surgery have been litigated exhaustively. The Court declines to rehash the history of those arrangements—the record speaks for itself.

## CONCLUSION

Accordingly, Cannady's requests that the Court: (1) "vacate or modify its December 22, 2025 Order to correct factual inaccuracies"; (2) "permit printing of public-docket materials"; (3) order a hearing pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979); (4) "require accurate representations from MDC Brooklyn"; (5) order MDC Brooklyn to provide Cannady with "meaningful ADA and Rehabilitation Act accommodations"; and (6) "grant such other relief as justice requires," are all DENIED.

Sentencing will proceed as scheduled on January 23, 2026, at 10:00 a.m.

Standby counsel is directed to provide a copy of this Order to defendant by email.

At Cannady's request, Chambers will also mail a copy of this Order to Cannady at the following address:

Vincent Cannady, Reg. No. 22313-045
MDC Brooklyn
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232

Dated: January 8, 2026
       White Plains, NY                    SO ORDERED:

                                           Vincent L. Briccetti
                                           United States District Judge

6