Copy mailed by chambers 4-14-26 Dh

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA      :

      :     **ORDER**

v.      :

      :     24 CR 278 (VB)

VINCENT CANNADY,      :
      Defendant.     :
-------------------------------------------------------x

At an on-the-record conference on March 30, 2026, the Court found defendant Cannady in civil contempt of the Verifiable Process Order (Doc. #538), and stated its intent to impose a sanction of civil confinement until Cannady purges the contempt. (Doc. #556). The Court has separately docketed an order dated April 14, 2026, entitled "Order of Civil Contempt" which memorializes that finding. (Doc. #563).

This order addresses the matters raised in Cannady's recent submission entitled "Objection to Order of Civil Contempt and March 30, 2026, Hearing Ruling and Response in Opposition to the Government's Proposed Contempt Order." (Doc. #560). Fairly construed, the requests and objections in Cannady's submission can be grouped into three categories:

1.     A request that the Court vacate its finding of civil contempt.

2.     A request that the Court deny the government's proposed contempt order imposing a sanction of civil confinement.

3.     Objections to the process by which Cannady has been held in civil contempt.

For the reasons detailed below, Cannady's requests are DENIED and his objections are OVERRULED.

Request that the Court vacate its finding of contempt

The Verifiable Process Order is a clear and unambiguous order, which required Cannady to, among other things, identify all email accounts, cloud storage accounts, messaging apps, collaboration platforms, or websites where Stolen Kyndryl Property was ever stored. (Doc. #538 at ¶ 1). The Verifiable Process Order also required Cannady to, under the supervision of the government and the FBI, return or delete all copies of Stolen Kyndryl Property in electronic form following the Court's conferences on March 23 and March 30, 2026. (Id. at ¶¶ 7, 11).

As detailed on the record at the conferences held on March 23 and March 30, 2026, Cannady has clearly and convincingly failed to comply with these unambiguous obligations, and he has not been reasonably diligent and energetic in attempting to accomplish what was ordered. See Drywall Tapers Local 1974 v. Local 530, 889 F.2d 389, 394 (2d Cir. 1989). Cannady's arguments to the contrary are unavailing.

1

First, Cannady claims it is impossible for him to comply with the Verifiable Process Order because he is incarcerated and because standby counsel possesses copies of the Stolen Kyndryl Property. (Doc. #560 at 1–3, 7). Not so. Standby counsel's possession of copies of Stolen Kyndryl Property did not prevent Cannady from, during the March 23 and March 30 conferences, identifying, returning, or destroying all copies of Stolen Kyndryl Property, in intangible or electronic form, that Cannady took from Kyndryl following his termination. Nor did Cannady's incarceration. To the contrary, the Court and the government have gone to great lengths to enable Cannady's compliance. Cannady has been provided numerous accommodations, including a laptop computer specially configured for his vision impairment, a tech aid capable of operating the laptop in accordance with Cannady's verbal instructions, and the assistance of standby counsel. The only impediment to Cannady's compliance is his own refusal to do so.

Next, Cannady argues the Court's finding of contempt is premature and "conflicts with the Court's prior sentencing order," which he claims gave him until his release from prison "and an additional 28 days of supervised release" to comply. (Doc. #560 at 2). The restitution order contained in the Judgment entered on January 28, 2026, requires Cannady to return or destroy all Stolen Kyndryl Property through a verifiable process under the supervision of the government and the FBI. (Doc. #509 at 7). The restitution order also provides that this obligation would become a mandatory condition of Cannady's supervised release if for some reason he has not complied before his release from prison. (Id.). But this provision in no way enables Cannady to flout his restitution obligation during his period of incarceration. Rather, the Verifiable Process Order, consistent with the restitution order contained in the Judgment, set forth clear and unambiguous deadlines for Cannady to perform specific aspects of his restitution obligation, with which he did not comply. (Doc. #538 at ¶¶ 1, 7, 11).

Finally, Cannady's repeated mention of the government's alleged failure to produce the "HP laptop" is nonsensical. As explained on the record ad nauseam, the government does not possess the laptop, and in any event, is not required to produce it. In repeatedly asserting this argument—and others like it—Cannady ignores the fundamental fact that the government, unlike Cannady, did not use Stolen Kyndryl Property to attempt to extort Kyndryl, and thus is not required by Court order to return the copies in its possession.

<u>Request that the Court deny the government's proposed contempt order imposing a sanction of civil confinement</u>

The Court's sanction of civil confinement is coercive—not punitive—and reasonably likely to compel Cannady's compliance with the Verifiable Process Order. The Court has determined, in an exercise of its "broad discretion to design a remedy that will bring about compliance," that no sanction short of civil confinement would be likely to compel Cannady's compliance. <u>Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.</u>, 369 F.3d 645, 657 (2d Cir. 2004).

Cannady argues this sanction is punitive because the time he serves in civil confinement for contempt will not count towards his 37-month criminal sentence. (Doc. #560 at 3–4). But

this is precisely what makes the sanction coercive.  If Cannady's civil confinement did not toll his criminal sentence, then the sanction would in no way motivate Cannady to comply.  See United States v. Dien, 598 F.2d 743, 744 (2d Cir. 1979).

To the extent Cannady argues the sanction of civil confinement has no reasonable probability of coercing his compliance (Doc. #560 at 3, 7), this argument is premature because the sanction had not yet gone into effect.  It goes into effect today.  For the reasons stated on the record, the Court has found this sanction has a realistic possibility of coercing Cannady's compliance with the Verifiable Process Order.  Cannady's self-serving statement that he will not provide additional information even if held for an extended period does not yet alter this finding.  See In re Grand Jury Proceedings, 994 F. Supp. 2d 510, 517 (S.D.N.Y. 2014).  Further, the Court has already scheduled a further conference on May 19, 2026, in the event Cannady has not purged his contempt by that time.  This conference is but one aspect of the Court's ongoing "conscientious effort to determine whether there remains a realistic possibility that continued confinement might cause the contemnor to comply as ordered."  Commodity Futures Trading Comm'n v. Armstrong, 269 F.3d 109, 112 (2d Cir. 2001).

Although Cannady objects to it, the Court's request to the Marshals Service and the Bureau of Prisons that he be confined at a federal or contract facility within two hours of the White Plains federal courthouse is yet another measure intended to facilitate Cannady's ability to immediately purge himself of his contempt when he so wishes.  This close proximity to the courthouse helps ensure Cannady, like any other civil contemnor, holds the keys to his prison cell in his own pocket.  See Ochoa v. United States, 819 F.2d 366, 369 (2d Cir. 1987).

Objections to the process by which Cannady has been held in civil contempt

Cannady's claim that he has been denied meaningful access to the Courts is nonsense. (Doc. #560 at 4, 9).  Cannady has been given ample opportunity to be heard on the issue of his contempt.  In the six weeks since the Court entered the Verifiable Process Order, Cannady has filed a dozen motions, objections, or other requests for relief.  (See Docs. ##541, 542, 543, 546, 548, 549, 551, 552, 553, 554, 555, 560).  These submissions repeatedly assert the same baseless claims despite the Court's rulings.  Limiting Cannady to a single filing in response to the government's proposed contempt order was a reasonable restriction in light of his history of abusive and frivolous filings.  In addition, Cannady has been heard not only through his submissions, but also in person.  Indeed, the Court conducted two hearings on March 23 and March 30, 2026, spanning more than six hours, at which Cannady presented various objections and had every opportunity to avoid a finding of contempt.

To the extent Cannady argues the Court's finding of civil contempt is based on the Court's own bias against him, this argument is plainly without merit.  The Court has never made any "statements dismissing the loss of Vincent Cannady's family's irreplaceable personal property."  (Doc. #560 at 5).  Nor has the Court improperly focused on "third-party interests." (Id.).  The Court has patiently and impartially overseen these proceedings, and the present focus on the victim's interest in restitution is justified.

Finally, there is no truth to Cannady's claim that the Court "wished it could impose a longer sentence but was limited by statute." (Doc. #560 at 2). Cannady faced a statutory maximum term of imprisonment of 20 years, and the Court imposed a within-guidelines sentence of 37 months' imprisonment.

Standby counsel is requested to provide a copy of this Order to defendant by email.

Chambers will mail a copy of this Order to Cannady at MDC-Brooklyn.

Dated: April 14, 2026
   White Plains, NY

      SO ORDERED:

      Vincent L. Briccetti
      United States District Judge

4